**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVEN JEAN, et al.,<br>Plaintiffs,<br>v.<br>C & FAMILY TRUCKING, LLC, et al.,<br>Defendants. | Civil Action No. 25-17420 (MAS) (RLS)<br><br>**MEMORANDUM OPINION AND ORDER** |

**SINGH, United States Magistrate Judge**.

**THIS MATTER** comes before the Court upon a Motion by Plaintiffs Keven Jean ("Keven") and Rockel Jean (collectively, "Plaintiffs") for leave to conduct alternative service on Defendants C & Family Trucking, LLC ("C & Family"), BGC Trucking Corp. ("BGC Trucking"), and Italo Gabriel Lasluisa Moposita ("Moposita") (collectively, the "Moposita Defendants") via service upon the insurer, GEICO (the "Motion"). (Doc. No. 5). No timely opposition has been filed.

The Court has fully considered Plaintiffs' written submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below and good cause shown, the Court DENIES without prejudice Plaintiffs' Motion for Alternative Service and extends the deadline for effectuating service by sixty (60) days from the entry of this Memorandum Opinion and Order.

## I. BACKGROUND AND PROCEDURAL HISTORY

On November 13, 2025, Plaintiffs initiated this diversity action arising from a June 5, 2025 automobile collision involving three vehicles on the George Washington Bridge in Manhattan, New York. (*See generally* Doc. No. 1). Plaintiffs allege that, on June 5, 2025, Keven was driving a truck within the scope of his employment in the middle lane on the George Washington Bridge, going westbound. (*See* Doc. No. 1 at p. 2 ¶ 1). According to the Complaint, Moposita drove a commercial vehicle owned or leased by C & Family and/or BGC Trucking[1] as an employee, agent, contractor, and/or independent contractor of C & Family and/or BGC Trucking. (*See* Doc. No. 1 at p. 3 ¶¶ 2-5, pp. 5-6 ¶¶ 2-5, p. 8 ¶ 2). Plaintiffs allege that Moposita failed to maintain a safe distance and collided with Keven's vehicle. (*See* Doc. No. 1 at p. 3 ¶ 3). Plaintiffs also allege that Defendant Xeuanny M. Soto-Herrera operated a vehicle in the lane to the left of Keven and in a manner that caused or contributed to the collision between Keven's vehicle and Moposita's vehicle.[2] (Doc. No. 1 at pp. 9-10 ¶¶ 2-5). Plaintiffs claim injuries and damages as a result of Defendants' alleged negligence.

Following unsuccessful attempts to serve the Moposita Defendants, Plaintiffs filed this Motion to seek leave to serve those Defendants through alternative means—

---

[1] Notably, while Plaintiffs include BGC Trucking as a Defendant in the caption of its Complaint and asserts allegations against in its Second Count, Plaintiffs do not identify BGC Trucking a party in the section labeled "Parties" in their Complaint. (*See* Doc. No. 1 at pp. 1-2).

[2] Plaintiffs served Defendant Xeuanny M. Soto-Herrera on November 24, 2025. (Doc. No. 4). Soto-Herrera has not filed a timely response to the Complaint.

specifically via Defendants' alleged insurance carrier, GEICO. (Doc. No. 5). Through the Motion, Plaintiffs detail their futile attempts to serve the Moposita Defendants at addresses located in New York and Pennsylvania which they derived from the Port Authority of New York & New Jersey Motor Vehicle Crash Report (the "MVCR") and process server inquiries. (*See* Doc. Nos. 5-2 & 5-3).

### A. ATTEMPTS TO SERVE MOPOSITA

As to Moposita, a process server first attempted service on November 21, 2025 at 108-42 38th Avenue, Flushing, New York 11368, the address listed on the MVCR. (*See* Doc. No. 5-2 at ¶ 5; Doc. No. 5-3, Ex. A at ECF p. 3). That first attempt was unsuccessful. (*See* Doc. No. 5-3, Ex. C at ECF p. 23). When arriving at the four-family unit, an unnamed tenant advised the process server that they were unaware of Moposita being affiliated with the address. (*See* Doc. No. 5-3, Ex. C at ECF p. 23). Thereafter, Plaintiffs engaged a different process server to attempt service on Moposita at a purportedly different location in Corona, New York[3] on January 22, 2026, February 3, 2026, February 6, 2026, and February 11, 2026, all to no avail. (*See* Doc. No. 5-3, Ex. F at ECF p. 44).

### B. ATTEMPTS TO SERVE C & FAMILY

As to C & Family, Plaintiffs' first process server made three service attempts on November 21, 26, and 29, 2025 at a Lancaster, Pennsylvania address contained in the

[3] Plaintiffs redacted the address(es) in Corona, New York in their Motion.

MVCR.[4] (*See* Doc. No. 5-3, Ex. D at ECF p. 27). When indicating that C & Family could not be served, the process server noted: "The location is a residence. No vehicles were parked in the driveway on each of the service attempts." (Doc. No. 5-3, Ex. D at ECF p. 27). Plaintiffs' second process server attempted service on C & Family also at an address in Lancaster, Pennsylvania following searches for affiliated phone numbers and addresses.[5] (*See* Doc. No. 5-3, Ex. F at ECF p. 43). During that attempt, the second process server remained on the premises for approximately two-and-one-half hours to no avail. (*See* Doc. No. 5-3, Ex. F at ECF p. 43).

### C. Attempts to Serve BGC Trucking

As to BGC Trucking, Plaintiffs' first process server made three unsuccessful attempts at a location in Lancaster, Pennsylvania (purportedly, the same address as C & Family) on November 21, 26, and 29, 2025. (*See* Doc. No. 5-3, Ex. D at ECF p. 29). The process server again noted that the address appeared residential and no vehicles were parked in the driveway during each attempt. (*See* Doc. No. 5-3, Ex. D at ECF p. 29). Plaintiffs' second process server similarly attempted service on BGC Trucking

---

[4] The precise address is redacted in the filed MVCR, which identifies the town as "Ancaster" in Pennsylvania. The Court assumes "Ancaster" to be a typographical error for Lancaster. Nevertheless, Plaintiffs' counsel has represented that the served address is the same as that listed in the MVCR.

[5] The second process server's "Affidavit of Due Dillegence [sic] of Personal Service" does not provide the date on which service was attempted. (*See* Doc. No. 5-3, Ex. F at ECF p. 43).

at the same address in Lancaster, Pennsylvania, waiting approximately two-and-one-half hours, without success. (*See* Doc. No. 5-3, Ex. F at ECF p. 45).

### D. THE MOTION

Having failed to personally serve the Moposita Defendants, Plaintiffs now move for leave to serve these Defendants through alternative means. (*See* Doc. No. 5). Specifically, Plaintiffs ask the Court to authorize service on the Moposita Defendants via the insurance carrier, GEICO, on whom Plaintiffs served the Motion via Certified Mail. (*See* Doc. No. 5-1). Plaintiffs contend that this method is reasonably calculated to provide the Moposita Defendants with actual notice of this lawsuit and thus would satisfy due process. (Doc. No. 5-4 at ECF pp. 1-2). In support of the Motion, Plaintiffs proffer the MVCR which discloses that Moposita drove a vehicle purportedly owned by C & Family and identifies BGC Trucking as the "Motor Carrier." (Doc. No. 5-3, Ex. A at ECF p. 3). It further identifies the insurance code 35882 as the insurer for the vehicle driven by Moposita; that code is assigned to GEICO. (Doc. No. 5-3, Ex. A at ECF p. 3).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 4 sets forth the mechanism for effectuating service on, *inter alia*, individuals, corporations, and unincorporated associations. Fed. R. Civ. P. 4. Rule 4(e)(2) permits service on an individual in the United States by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;

> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). In addition, a party may serve an individual pursuant to state law in the state where the District Court is located or where service is to be made. Fed. R. Civ. P. 4(e)(1). Federal Rule of Civil Procedure 4(h) governs service of process upon corporations. Fed. R. Civ. P. 4(h); *see also Gabros v. Shore Med. Ctr.*, 724 F. App'x 119, 121 (3d Cir. 2018) ("[C]orporate defendants must be served consistent with Rule 4(h)."). Pursuant to that Rule, a plaintiff must serve a corporation in a manner permitted for service upon an individual under Rule 4(e)(1) of the Federal Rules of Civil Procedure or by delivering a copy of the summons and complaint to an officer, managing or general agent, or other agent authorized by appointment or law. Fed. R. Civ. P. 4(h)(1)(A)-(B).

Here, Rule 4 of the Federal Rules of Civil Procedure would permit service in accordance with New Jersey law upon the Moposita Defendants or, as to Moposita, in accordance with New York law and, as to C & Family and BCG Trucking, in accordance with Pennsylvania law.

### 1. *Service in Accordance with New Jersey Law*

New Jersey Court Rules provide that personal service is the "primary method of obtaining in personam jurisdiction over a defendant in [the] State[.]" N.J. Ct. R. 4:4-4(a). If personal service cannot be made after "diligent effort and inquiry[,]" New Jersey

Court Rule 4:4-4 permits substituted or constructive service through certain methods. N.J. Ct. R. 4:4-4(b). However, if plaintiffs cannot effectuate service through any of the modes provided for under that New Jersey Court Rule, "any defendant may be served as provided by court order, consistent with due process of law." N.J. Ct. R. 4:4-4(b)(3).

To proceed with substituted service, however, plaintiffs must demonstrate due diligence consistent with New Jersey Court Rule 4:4-5(b). *See* N.J. Ct. R. 4:4-5(b); *Mizrahi v. Anna*, No. 23-2462, 2023 WL 7273725, at *9 (D.N.J. Nov. 3, 2023). Diligence is a fact-sensitive inquiry "'measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant.'" *H.D. Smith, LLC v. Prime Rite Corp.*, No. 16-294, 2016 WL 3606785, at *1 (D.N.J. July 5, 2016) (quoting *Modan v. Modan*, 327 N.J. Super. 44, 48 (App. Div. 2000)). To satisfy the diligent inquiry requirement, courts generally require plaintiffs to follow up on information they possess or can reasonably obtain, pursue reasonable leads, and utilize reasonably available methods to locate the defendant(s). *See, e.g.*, *Mizrahi*, 2023 WL 7273725, at *9-10 (denying the motion for service by email, where the plaintiff failed to follow up on leads from their initial investigation and was permitted to serve third-party subpoenas on relevant entities to identify a valid address for the defendant). However, diligence "does not necessarily mean a plaintiff take every conceivable action." *H.D. Smith*, 2016 WL 3606785, at *2.

Once due diligence is established, the Court considers whether the proposed alternate method of service comports with due process. *See* N.J. Ct. R. 4:4-4(b)(3); *H.D. Smith*, 2016 WL 3606785, at *2. Due process requires that there be "notice reasonably

calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *O'Connor v. Altus*, 67 N.J. 106, 126 (1975) (internal citation and quotation marks omitted). "[I]n the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950) (citations omitted).

Notably, the New Jersey Supreme Court as well as courts in this District have endorsed substitute service upon a party's automobile insurance carrier once the plaintiff satisfies the diligent inquiry prerequisites. *See*, *e.g.*, *Feuchtbaum v. Constantini*, 59 N.J. 167, 179 (1971); *see also Kapanadze v. Hutchings*, No. 25-3861, 2026 WL 764400, at *2 (D.N.J. Mar. 17, 2026); *Michals v. Medina Lopez*, No. 20-6196, 2020 WL 6281648, at *2 (D.N.J. Oct. 26, 2020) (acknowledging substitute service on automobile insurance carrier is constitutionally sufficient); *Nabi*, 2019 WL 5800254, at *2-3 (approving substitute service on insurer which had been contacted by plaintiff and agreed to both accept service and notify defendant of the pending suit); *Dattalo v. Hampton*, No. 14-290, 2015 U.S. Dist. LEXIS 21586, at *4 (D.N.J. Feb. 24, 2015) (allowing substitute service on carrier following diligent inquiry and citing cases permitting same). Indeed, if plaintiffs can establish (1) the defendant could not be served despite diligent inquiry and efforts, (2) the interests of the insured and carrier are aligned, and (3) the carrier

acknowledges the instant suit, then courts have permitted substitute service on the automobile insurance carrier. *See, e.g.*, *Kapanadze*, 2026 WL 764400, at *2 (citing cases).

### 2. *Service in Accordance with New York Law (as to Moposita)*

Pursuant to New York law, personal service upon a natural person may be effectuated primarily by delivering the summons within the state to: (1) the person to be served; or (2) a person of suitable age and discretion at the actual dwelling place or usual place of abode of the person to be served. N.Y. C.P.L.R. §§ 308(1)-(2). Alternatively, service may be made upon a designated agent. N.Y. C.P.L.R. § 308(3). If unsuccessful under paragraphs (1) and (2) despite the exercise of due diligence, service may be made by affixing the summons to the door of a dwelling place or usual place of abode within the state where the person to be served resides, and by mailing the summons to the defendant's last known residence in an envelope bearing the legend "personal and confidential" and not otherwise identifying the communication as from an attorney or concerning an action against the person to be served. N.Y. C.P.L.R. § 308(4). If service is impracticable through sections one, two, and four of N.Y. C.P.L.R. § 308, then the Court may direct another manner "upon motion without notice." N.Y. C.P.L.R. § 308(5).

Notably, unlike New Jersey, New York law "does not require proof of due diligence or of actual prior attempts to serve a party." *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 365 (E.D.N.Y. 2016) (internal quotation marks and citation omitted). Rather, impracticability requires a showing that "the defendant could not be located by means

of a diligent search." *Id.* (citations omitted); *accord Toremis v. Ampadu*, No. 26-2192, 2026 WL 1678345, at *3 (S.D.N.Y. June 10, 2026) (quoting *Bozza v. Love*, No. 15-3271, 2015 WL 4039849, at *1 (S.D.N.Y. July 1, 2015)).

Substituted service under New York law, including through an insurance carrier, must still comport with due process. *See, e.g.*, *Toremis*, 2026 WL 1678345, at *3 ("Whatever manner of service a court allows must comport with due process[.]"); *see also Esposito v. Ruggerio*, 598 N.Y.S. 2d 66, 67 (N.Y. App. Div. 1993) (permitting service through insurance carrier where plaintiffs showed that the defendant moved from the address disclosed in the accident report and did not update forwarding address with postal authorities); *but see Phillips v. Solano*, 837 N.Y.S. 2d 674, 676 (N.Y. App. Div. 2007) (reversing order permitting substitute service through insurance carrier where the plaintiffs did not confirm the carrier covered the defendants because such service did not comport with due process).

### 3. *Service in Accordance with Pennsylvania Law (as to the Corporate Defendants)*

Because C & Family and BGC Trucking are located in Pennsylvania, service may also be effectuated pursuant to Pennsylvania law. *See* Fed. R. Civ. P. 4(h)(1)(A). The Pennsylvania Rule of Civil Procedure for service on a limited liability company, such as C & Family, permits an unincorporated association to be served through:

> (1) any partner, officer or registered agent, or (2) an agent authorized by the [unincorporated association] in writing to receive service of process for it, or (3) the manager, clerk or

> other person for the time being in charge of any regular place of business or activity of the [unincorporated association].

Pa. R. Civ. P. 423(1)-(3). The Pennsylvania Rule of Civil Procedure for service on a corporation is similar and permits service through:

> (1) an executive officer, partner or trustee of the corporation or similar entity, or (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa. R. Civ. P. 424(1)-(3). Substituted service upon a corporation or similar entity is only permitted as a "last resort" under Pennsylvania law. Pa. R. Civ. P. 430(a) (permitting substitute service if service cannot be made under an applicable rule); *see also Deutsche Bank Nat'l Tr. Co. v. Marjer, Inc.*, No. 14-2422, 2014 WL 5410203, at *3 (E.D. Pa. Oct. 24, 2014). In any event, a plaintiff must first demonstrate (a) good faith efforts to locate the defendant, followed by (b) practical efforts to serve the defendant, and finally, (c) show the alternative means is "reasonably calculated to provide the defendant with notice of the proceedings," *i.e.*, the proposed method comports with due process. *Id.*

A party's "good faith effort" to locate the defendant entails "more than 'a mere paper search.'" *Laborers' Dist. Council Constr. Indus. Pension Fund v. Miniscalco Corp.*, No. 20-5745, 2021 WL 121136, at *3 (E.D. Pa. Jan. 12, 2021) (quoting *Deutsche Bank*, 2014 WL 5410203, at *3). A "good faith effort" requires steps such as inquiring as to the defendant's last known address(es) with the United States Postal Office, any relatives, neighbors, and employers, as well as consulting public records such as voter registration

and motor vehicle records. *Id.* A party's failure to undertake the foregoing steps is unlikely to demonstrate "that regular service cannot be made." *Deutsche Bank*, 2014 WL 5410203, at *3. Similarly, substitute service may not be appropriate if the plaintiff fails to indicate any attempt to locate a corporation's officers, partners, or agents capable of accepting service on behalf of a corporate defendant. *See Laborers' Dist. Council*, 2021 WL 121136, at *4.

Once good faith efforts are demonstrated, a plaintiff must show his practical efforts to serve the defendant. Such practical efforts generally require multiple attempts at service before seeking alternative means from the Court. *See Banks v. Alvarez*, No. 08-2030, 2008 WL 2579704, at *2 (E.D. Pa. June 30, 2008). Though courts have not specified a minimum number of attempts to satisfy this standard, circumstances may require attempts at different times of day or on different days of the week to be considered "practical." *See Deutsche Bank*, 2014 WL 5410203, at *4. Lastly, the proposed alternative method of service must be "reasonably calculated to provide the defendant with notice of the proceedings." *Id.* at *3. Yet, if a plaintiff cannot establish good faith efforts to locate, or practical efforts to serve, the court need not reach the due process analysis. *Id.*

## III. DISCUSSION

Here, Plaintiffs have been unsuccessful in personally serving the Moposita Defendants. For the Court to grant Plaintiffs leave to serve these Defendants through alternative means, Plaintiffs must first show that they exercised due diligence, or at least

as to Moposita the impracticability, in formally serving them. If Plaintiffs have met that burden, regardless of the applicable state law, then the Court considers whether the proposed alternate means of service comports with due process.

To date, and despite engaging two different process servers, Plaintiffs have not formally served Moposita, although they have attempted to do so at the Flushing, New York address contained in the relevant MVCR and a Corona, New York address purportedly later identified. When the first process server attempted service at the Flushing address, he certified that another tenant at the "four-family residence" who answered the door was unfamiliar with anyone by Moposita's name at that address. (*See* Doc. No. 5-3, Ex. C at ECF p. 23). When Plaintiffs engaged a second process server, a further search[6] revealed what appeared to have been a "new" address in Corona, New York.[7] (*See* Doc. No. 5-3, Ex. F at ECF p. 44). Although seemingly learning of an additional address in Corona, New York, Plaintiffs still could not effectuate service on

---

[6] Plaintiffs' second process server conducted searches for Moposita's addresses and phone numbers using TLO TransUnion and IRB Searches. (*See* Doc. No. 5-3, Ex. F, ECF p. 44).

[7] The process server indicated that he attempted service on Moposita at his "residence" in a redacted location in Corona, New York and then subsequently at a "newly discovered address" in Corona, New York, which bore the same zip code as the Flushing, New York address identified in the MVCR. (Doc. No. 5-3, Ex. F at ECF p. 44). The Court takes judicial notice that Corona and Flushing, New York are bordering neighborhoods within Queens, New York. However, it is not clear whether attempts at service were made to two or three different locations due to the redactions in the filed documents.

Moposita. Notably, Plaintiffs do not offer proof of Moposita's actual residence other than the location disclosed in the MVCR.

Similarly, Plaintiffs' first process server attempted to serve C & Family and BGC Trucking, unsuccessfully, at an address in Lancaster, Pennsylvania which was purportedly contained in the MVCR.[8] Although these Defendants are entities, the process servers reported that the address was residential and no vehicles were present in the driveway during each attempt at service. Plaintiffs' second process server, however, conducted searches through TLO TransUnion, IRB Searches, Pennsylvania Department of Corporations, and Pennsylvania Superior Court. (*See* Doc. No. 5-3, Ex. F, ECF pp. 43, 45). Following those searches, the server attempted service at a redacted location in Lancaster, Pennsylvania. (*See* Doc. No. 5-3, Ex. F, ECF pp. 43, 45).

While the requisite due diligence or diligent search does not require a plaintiff to undertake every possible measure to effectuate personal service, *H.D. Smith*, 2016 WL 3606785, at *2, courts have found reasonable diligence where a plaintiff has made "multiple attempts at personal service at a verified address coupled with confirmation that a defendant resides at the address," *Kapanadze*, 2026 WL 764400, at *2 (citations omitted). Under any applicable state law, Plaintiffs must show more than just use of a process server. For example, courts have found reasonable diligence where a plaintiff

---

[8] Because the addresses in the MVCR and the servers' affidavits of service are redacted, the Court is unable to confirm that they are indeed the same address. Nevertheless, counsel avers in his Certification that they are the same address of 111 Tanglewood Lane, Lancaster, Pennsylvania 17601.

employs process servers along with other inquiries, such as "skip searches," internet and property record searches, and requests with the postal service. *See, e.g.*, *Michals*, 2020 WL 6281648, at *2 (citing cases); *see also J.C. v. M.C.*, 438 N.J. Super. 325, 331 (Ch. Div. 2013) ("In short, a plaintiff must generally demonstrate a good faith, energetic effort to search and find a defendant whose address is unknown."). A plaintiff should "describe the steps taken to obtain the defendant's current address," such as averring whether he accessed "publicly available data bases, tax records, voting rolls, criminal history records, credit records, telephone directories, divorce records, or death records or conducted internet inquiries." *Prudential Ins. Co. of Am. v. Holladay*, No. 07-5471, 2008 WL 1925293, at *3 (D.N.J. Apr. 30, 2008) (declining to find due diligence where the plaintiff simply stated that it conducted two "background searches" and "a Postal Forwarding search"); *see also Tucker v. Nault*, No. 22-4719, 2023 WL 5346603, at *2-3 (D.N.J. Aug. 21, 2023) (finding due diligence where the plaintiff confirmed the defendant's address through LexisNexis, WhitePages, and Skiptrace searches).

Moreover, applying the less onerous standard of impracticability under New York law, Plaintiffs must still show the traditional methods of service under the N.Y. C.P.L.R. could not be accomplished. *See Ferrarese*, 164 F. Supp. 3d at 365. Impracticability is fact-sensitive. *See*, *e.g.*, *Reyes v. Draw Shop LLC*, No. 25-9406, 2026 WL 2334735, at *3 (S.D.N.Y. Aug. 12, 2026) (attempting service on multiple occasions through process servers and engaging in on-going skip-tracing and address verification); *see also Ransome v. Epstein*, No. 17-616, 2018 WL 637421, at *1 (S.D.N.Y. Jan. 30, 2018)

(retaining private investigators and attempting service at three potential addresses associated with defendant in addition to undeliverable emails and service upon counsel representing defendant in unrelated pending litigation); *Fortunato v. Chase Bank USA, N.A.*, No. 11-6608, 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012) (demonstrating numerous attempts to personally serve defendant and diligence in searching for alternate residences). That said, a plaintiff's failure to confirm an insurance carrier covered the parties and/or vehicles involved would be insufficient to demonstrate impracticability. *See Phillips*, 837 N.Y.S. 2d at 676. Without such confirmation, a defendant would be without sufficient notice of the pending suit and, thus, service through the insurance carrier does not comport with due process. *See id.*

Here, Plaintiffs' process server reports that he conducted searches on two databases for Moposita and four for C & Family and BGC Trucking. However, Plaintiffs do not assert that the results confirmed the identified locations are in fact associated with the Moposita Defendants. For Moposita, the Court cannot identify on this record whether the "new" Corona, New York address is the same or different location than the address identified in the MVCR. Further, while the first process server indicated that a resident at the Flushing, New York address reported to lack knowledge of Moposita's affiliation with that address, the second process server does not advise whether he inquired with any neighbors or tenants at the address, or addresses, in Corona, New York.

Similarly, for C & Family and BGC Trucking, the affidavits of service fail to provide sufficient information to determine that these entities are indeed associated with the address in Lancaster, Pennsylvania or that other locations could not be identified from other sources. The process servers reported that this address was residential and did not indicate whether they inquired of neighbors or tenants. Notably, Plaintiffs do not represent that they reached out to GEICO to solicit the addresses or contact information of the Moposita Defendants, searched motor vehicle or postal records, or conducted other searches available through public means. Nor do Plaintiffs indicate that efforts were made to ascertain or otherwise locate officers, partners, or agents of C & Family or BGC Trucking that would be authorized to accept service. Accordingly, based on this record, the Court cannot find that Plaintiffs have taken the reasonable diligence to locate the Moposita Defendants such that they can obtain leave to serve via an alternate means.

Even if the Court were to find Plaintiffs exercised sufficient diligence or that service was impracticable, the Court is not convinced that Plaintiffs' proposed alternate means of serving GEICO would comport with notions of due process. In cases where this Court has permitted alternate service on an insurer, the plaintiff has generally established that he had contacted the insurer, which became aware of the lawsuit, and confirmed that the insurer indeed provided coverage to the defendant. *See, e.g.*, *Kapanadze*, 2026 WL 764400, at *2; *Michals*, 2020 WL 6281648, at *2; *Nabi*, 2019 WL 5800254, at *2-3 (approving substitute service on insurer which had been contacted by

plaintiff and agreed to both accept service and notify defendant of the pending suit). Here, Plaintiffs do not state if they have made any efforts to confirm GEICO's affiliation with the Moposita Defendants or to contact GEICO in any way related to this action. While the MVCR identifies GEICO as the insurer for the vehicle being driven by Moposita, there is nothing in the record to confirm whether GEICO covers claims asserted against Moposita, C & Family, and/or BGC Trucking. Without any further confirmation that GEICO insures each or any of the Moposita Defendants, it is not clear that service of those Defendants through GEICO would provide the reasonably calculated notice required by due process. *See Mullane*, 339 U.S. at 314.

## IV. CONCLUSION

Therefore, for the foregoing reasons, on this record, Plaintiffs have failed to establish sufficient due diligence in attempting to serve the Moposita Defendants or that service of these Defendants through GEICO would comport with due process. Nevertheless, the Court finds good cause to extend the original deadline to effectuate service of February 11, 2026 an additional sixty (60) days from the date of the entry of this Memorandum Opinion and Order pursuant to Federal Rule of Civil Procedure 4(m).

Accordingly, for good cause shown,

**IT IS** on this **25th** day of **September 2026** hereby

**ORDERED** that Plaintiffs' Motion for Substitute Service is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiffs' deadline to effectuate service on the Moposita Defendants is hereby extended to sixty (60) days from the date of the entry of this Memorandum Opinion and Order; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket Entry Number 5.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**